## PROSECUTIONS FOR PROCURING.

[Circuit Court of Tuscarawas County.]

CAROLINE STUDER v. STATE OF OHIO. *

Decided, December 15, 1905.

*Criminal Law—Prosecution for Decoying Females under Eighteen Years of Age—Scienter—Gravamen of the Offense—Venue—Evidence—Acquittal of One who Co-operated in the Procuring—Section 7023.*

1. It is not necessary under an indictment for "inducing, decoying or procuring any female under eighteen years of age * * * to enter any house of assignation or any house of ill-fame for the purpose of seduction or prostitution" that the defendant shall be charged with knowledge that the female so decoyed was under eighteen years of age.
2. Where the inducing, decoying, or procuring is done in one county, but the house of ill-fame which is entered is in another county, the venue of the prosecution is properly laid in the county where the inducing, decoying or procuring was done.
3. Where two persons are jointly indicted for the same offense, neither the court nor the jury engaged in the trial of the second defendant is concluded by the fact that a verdict of not guilty was returned in the case of the first defendant.
4. It is better to err on the side of permitting testimony to be introduced than of excluding it, and in a case involving circumstantial evidence, where some latitude in the matter of evidence is necessary, the judgment will not be reversed because evidence was admitted which was unnecessary but not prejudicial.

W. O. Werntz, Atlee Pomerene and Henry Bowers, for plaintiff in error cited in support of the position that *scienter* is a necessary averment in an indictment under Section 7023—*Anderson* v. *State,* 7 Ohio (pt. 2), 250; *Birney* v. *State,* 8 Ohio, 230; *Miller* v. *State,* 3 Ohio St., 475; *Aultfather* v. *State,* 4 Ohio St., 467; *Crabtree* v. *State,* 30 Ohio St., 382; *Farrell* v. *State,* 32 Ohio St., 456; *State* v. *Morton,* 8 Wis., 167; 21 Am. & Eng. Enc. Law (1st Ed.), 850, note.

* Affirmed by the Supreme Court without report, *Studer* v. *The State,* 74 O. S., 519.

Venue of the prosecution—7 Am. & Eng. Enc. Law (1st Ed.), 758-762; *State* v. *House*, 55 Iowa, 466; *Connor* v. *State*, 29 Fla., 455 (10 So. Rep., 891).

As to declaration of co-conspirators—*Goins* v. *State*, 46 Ohio St., 457; *Clawson* v. *State*, 14 Ohio St., 234; *Patton* v. *State*, 6 Ohio St., 467; *Seville* v. *State*, 49 Ohio St., 117.

TAGGART, J.; McCARTY, J., concurs; DONAHUE, J., dissents in a separate opinion.

Error to the Tuscarawas Common Pleas Court.

Caroline Studer was indicted at the September Term, 1905, of the court of common pleas in this county, charged, under Section 7023, Rev. Stat., with inducing, decoying and procuring female persons under eighteen years of age to enter a house of ill-fame for the purpose of prostitution. Thereupon, on the return of this indictment, she filed a demurrer on the ground that the indictment did not charge an offense under the laws of Ohio. This demurrer was overruled. She was placed on trial, and she made the same question at the close of the state's testimony—that the testimony did not establish a crime for which she should be held. This was overruled by the court and the case proceeded to a verdict of guilty. Sentence was pronounced by the court and this proceeding in error is prosecuted.

The first question that is made is an objection to the indictment, and addressed also to the contention that there is no testimony that establishes a crime against her. The indictment does not contain a *scienter* that she knowingly performed the acts for which she should be held.

Section 7023, Revised Statutes, omitting the words that are unnecessary for a correct understanding of the question, is as follows:

"Whoever induces, decoys or procures any female person under eighteen years of age    *    *    *    to enter any house of assignation or any house of ill-fame for the purpose of seduction or prostitution,    *    *    *"    shall be punished, as provided in the statute.

It is claimed that the indictment should charge, as in cases of selling liquor to minors, the *scienter*, and our attention is called to a number of cases wherein the statutes while not containing the word "knowingly," the courts have held that the indictment must contain a *scienter*, and the proof must show knowledge. *Birney* v. *State*, 8 Ohio, 230; *Miller* v. *State*, 3 Ohio St., 475; *Aultfather* v. *State*, 4 Ohio St., 467; *Farrell* v. *State*, 32 Ohio St., 456, and others.

An examination of this statute convinces the majority of the court that that contention ought not to obtain in this case. Whatever may have been the former holdings of the Supreme Court, the Legislature in enacting this statute, as we think, clearly defined the crime, and the indictment alleges the offense in the language of the statute. The Legislature, we think, did not intend to make *scienter* an element of this offense. If persons engage in inducing, decoying or procuring female persons to enter houses of ill-fame for the purpose of prostitution, they must, at their peril, ascertain the age or ages of the persons so procured. It is no crime to induce, decoy or procure female persons over the age of eighteen years to enter a house of assignation or house of ill-fame, for the purpose of assignation or prostitution, but it does become a crime to procure female persons under eighteen years of age. And, therefore, persons engaged in this business, we think at their peril, must ascertain and know whom they procure or decoy or induce to so enter into this business.

We think the question is fairly settled in *State* v. *Kelly,* 54 Ohio St., 166, 170, 171. This was simply a violation of a police regulation under an act of the Legislature "to provide against the adulteration of food and drugs." But in that case the counsel brought to the attention of the court directly the holding of the courts in cases similar to this, and we think in this case an examination of the cases cited in the brief of counsel is instructive, and we want to call attention to them.

"A distinct class of cases have come up, in which the unlawful act is done intentionally, but in ignorance that it is unlawful. This ignorance is of two kinds: First, ignorance of law; and, second, ignorance of fact. That ignorance of law is not a de-

fense is generally conceded.  *  *  *  Ignorance of fact, however, presents questions far more intricate, and as to this defense, we may lay down the following propositions:

"First.  When to an offense knowledge of certain facts is essential then ignorance of these facts is a defense.

"Second.  When a statute makes an act indictable, irrespective of guilty knowledge, then ignorance of fact is no defense. *  *  *

"It is easy to see that, to require an affirmative proof on the part of the state that the accused had actual knowledge of the adulteration, would put an end to many meritorious prosecutions.  The cases even warrant the holding that the accused must know at his peril, and that such doctrine is necessary to protect the public.  *  *  *  Analogous cases have arisen under statute making it indictable to abduct, seduce or violate girls under a specified age.  Here, also, it is no defense that the defendant mistook the girl's age. *  *  * In other lines of prosecution, under statutes making acts indictable irrespective of intent, similar conclusions have been reached."

An examination of the brief of counsel on page 173, *et seq.*, will show that all the authorities hereinbefore cited were called to the attention of the Supreme Court.  In construing the statutes then before it, the court, speaking through Judge Shauck says, page 178:

"The act does not in terms require, to constitute an offense against its provisions, that the adulterated article of food shall be sold to be used by the purchaser as human food.  Nor does it in terms require, as an element of the offense, knowledge of the fact that the article is adulterated, or provide that a want of such knowledge shall constitute a defense.  Both conclusions stated in the decision of the court of common pleas are therefore wrong unless they are justifiable inferences from the purpose and indicated policy of the act."

Purpose and knowledge, except when they are indicated by the character of the forbidden act, are, in most cases, unsusceptible of proof.  If this statute had imposed upon the state the burden of proving the purpose of the vendor in selling an article of food, or his knowledge of its adulteration, it would thereby have defeated its declared purpose.  Since it is the

duty of courts to so construe doubtful statutes as to give effect to the purpose of the Legislature, they can not in case of a statute whose provisions are unambiguous, and whose validity is clear, defeat the purpose by construction."

The correct view of statutes of this general nature is stated by the Supreme Court of Massachusetts in *Commonwealth* v. *Murphy*, 165 Mass., 66:

"Considering the nature of the offense, the purpose to be accomplished, the practical methods available for the enforcement of the law, and such other matters as throw light upon the meaning of the language, the question in interpreting a criminal statute is, whether the intention. of the Legislature was to make knowledge of the facts an essential element of the offense, or to put upon every one the burden of finding out whether his contemplated act is prohibited, and of refraining from it if it is."

The majority of the court are of the opinion that in the enactment of the statute under consideration it was the evident purpose of the Legislature to protect the public against the harmful consequences of decoying, inducing and procuring females under eighteen years of age to enter houses of ill-fame for the purpose of prostitution, and there is no difference between this statute and those which make it indictable to abduct, seduce or violate girls under a specified age. It is the same provision. If a person seeks to decoy, induce or procure a female person to enter a house of ill-fame they must do so at their peril, and it is no defense for a defendant, indicted for this offense, to say that he or she mistook the girl's age. So we think the indictment is sufficient.

At the close of the state's testimony a motion was made to direct a verdict on the ground that the record then showed that the house of ill-fame that was entered by these two girls was in Stark county and not in Tuscarawas county; and that, therefore, the crime, if any crime was committed, was committed in Stark county. It is well known that a person shall not be held to answer for a charge except in the county where the crime was committed, and thus venue is important.

It is claimed in this case that the proof shows this crime was committed in Stark county. This woman was charged with inducing, decoying or procuring these girls to enter a house of ill-fame for the purpose of prostitution. We think the gravamen of this offense is the decoying, the procuring, the inducing, and when there is the decoying, the procuring and the inducing followed by the entrance to the house of ill-fame for this immoral purpose you then have the crime complete, the venue being where the decoy was laid, where the persuasion was exerted, or where the inducement was held out. The majority of the court think that it is the right view of the case, and that the court was right in refusing to overrule this motion; that the venue was properly laid and properly sustained by that proof.

Objections are made as to the admission of testimony in this case. In all cases similar to this, of circumstantial evidence there must be some latitude, and we do not think the court in this case overstepped the boundaries or permitted the introduction of testimony that could be called prejudicial. There was some testimony that was perhaps unnecessary to have been presented, or to have gone to the jury. There is difference between hearing a case, with counsel vigorous, able, prompt, watching the rights of the client, as they are entitled to do, and as the record shows was done, and cooly and critically examining every question and answer as it appears in the record. The court might sometimes err in the introduction of testimony and permit more than was necessary, and yet the rule is stated that it is better to err on the side of the introduction of testimony than its exclusion, and only when it is prejudicial will a court reverse. We do not think this testimony as shown here was prejudicial, because if this conviction was right, the introduction of testimony claimed to be improper could have had very little force or effect upon the mind of the jury, and it could not then be said to be prejudicial.

It is claimed that there is no testimony to support this case, and that it ought to be reversed and the motion in arrest of judgment should have been sustained. The majority of the court do not think so. We think this conviction is abundantly established by this record. On the day charged in this indictment

the accused was in Canal Dover, at the house of Mrs. Alberts, when she met Mrs. Whitmire, who is jointly indicted with her. At this meeting the accused informed Mrs. Whitmire "that she was running a hotel in Canton, but good help was hard to get and that she wanted some girls to work in the hotel."

Mrs. Whitmire informed Mrs. Studer that if she heard of any girls that wanted a place in a hotel she should tell them where the hotel was. The girls went to a show in the evening of this day and Mrs. Whitmire and her husband awaited their return in an adjoining saloon, and then took them to their home, and informed them that a lady in Canton, who had come to the show, wanted a couple of girls at a hotel, and gave a description and location of the hotel. The next day after the show the Whitmires directed the girls to Alberts for more specific directions. They were at Alberts when Mr. Whitmire again appeared on the scene and furnished them money, and gave them more specific directions to find Mrs. Studer's place. These girls had no information in regard to Mrs. Studer's "hotel," other than that imparted by the Whitmires and Alberts. On their arrival at Mrs. Studer's the girls informed Mrs. Studer that they were informed by Whitmire that she wanted girls to work in her hotel. She replied that she had left word at Mrs. Alberts' and down there at Canal Dover for some girls to work in the hotel, but that she did not want them to work in the hotel, but that she wanted them for her house of ill-fame. At this time and prior thereto she was the keeper of a house of ill-fame under the guise of the Central Hotel.

Was there any trouble in the jury's finding where the decoy was laid, where the persuasion exerted, where the inducement was put forth? All these facts and circumstances were for the jury. Was Mrs. Studer keeping a hotel, and did she want girls to do hotel work? What did she mean by "business is good, but good help is hard to get"? Was it a mere coincidence that she was in Canal Dover that day and met the Whitmires? How did the Whitmires understand her remarks—what meaning did it convey to them? It is claimed that if there was any decoy or inducing, the Whitmires must have been a party to it, and that

this could not be so, as the jury which tried Mrs. Whitmire acquitted her.    This may be all true, but neither the jury nor the common pleas court in this cause were concluded by that verdict.    Mrs. Whitmire could not be again tried for that offense but the jury in this case were entitled to pass on the evidence in this case, and if it satisfied them that these girls were decoyed into entering this life of shame, they could so find, even if contrary to the finding of a former jury on the trial of one jointly indicted with the accused.

What is a decoy?    It is the appearance of things as being natural and true for the purpose of entrapping, when in fact they are unnatural and untrue; anything intended to lead into a snare; an enticement that deceives and misleads into danger by artifice.

The majority of this court think that the jury were fully justified that there was a decoy, an inducement and persuasion held out to the girls by the accused in Tuscarawas county.    "I want girls for hotel work."    She had no hotel.    "I did leave word down there for girls," "but not to do hotel work."    "I want you to enter my home for immoral purpose."    The decoy was laid in this county to lead the girls to her house of ill-fame in Stark county.    The facts and circumstances in this record were of such force as to bring the conclusion in the minds of the jury that this woman was guilty of this crime, and with that conclusion we are in accord; the motion in arrest of judgment was properly overruled.

Finding no error in this record to the prejudice of the plaintiff in error, the judgment of the court of common pleas will be affirmed and the cause remanded for execution.

DONAHUE, J., dissenting.

It is so very late now that time ought not to be taken with a dissenting opinion, but dissenting from an opinion as able as that we have just listened to certainly would require of a judge that he give some sort of reason for his dissenting, and I will only hold you a few moments in that behalf.

As to the question of *scienter* in the indictment, or the question of its not being averred in the indictment, while it is contrary to all my experience in the law, yet in view of the opinion in *State* v. *Kelly*, 54 Ohio St., 166, I could reconcile myself to the position of the majority of the court, and do, although I have not so learned the law myself; and although the. Supreme Court does attempt to make a distinction between a crime, which is a police regulation, not involving, as it says, moral turpitude, and one that does, I am hardly able to reach out and grasp the distinction, and I believe the Supreme Court have fairly said in this character of cases that the *scienter* need not be averred in the indictment, although I confess I do not see and have not heretofore so understood the law. My opinion was, that this character of cases was the same as the sale to a minor where the Supreme Court have said time and again that it must be with the knowledge of the fact. But upon that I would not dissent.

I want to say that this is the most remarkable result of a case, in which I have disagreed, that I have met during my experience on the bench. I am very glad that my associates can conscientiously affirm this judgment. I can not do it myself. It is evident that the woman is guilty· of this crime, and it is only a technical objection arising in my mind.

But this is the point that appeals to me in this case. No chain is stronger than its weakest part, and this whole prosecution gathers around and about a statement made by Mrs. Studer at the home of Mrs. Albert over in Canal Dover. There is the starting place of this prosecution. Whatever expressions are introduced after that must be supported in that conversation. It won't do to offer what Mrs. Whitmire says, or what the girls say Mrs. Whitmire told them. The state is finally relegated to their evidence on what occurred at Alberts'; and what was that? Mrs. Alberts says, Mrs. Whitmire says, and Mrs. Studer says; "I said business was good over there but good help was hard to get." Probably it was in her line; no doubt about it, that good help was hard to get. That is where the state must finally rest its case, because if Mrs. Whitmire misrepresented that statement to these girls, without authority, without con-

spiracy, of course it is not important, it does not bind Mrs. Studer. Mrs. Studer makes use of this expression: "Business is good in Canton," and it seems to be from all the evidence we read in this record, "but good help is hard to get." All the evidence of the state is exhausted when that statement is proven against Mrs. Studer. That is the end of it. It is the nucleus about which all the other evidence centers. That being true, can it be resolved into a statement that "I want young girls under eighteen years of age for prostitution?" I do not think it can.

Suppose she said, "I want girls for dining room and will pay five dollars a week for them," which was the statement made at Mrs. Alberts' so far as this record is concerned. Can that be resolved into a statement that, "I want girls under eighteen years of age for prostitution. I want you to go out and get these particular girls under eighteen years of age, or any other girl under eighteen years, for prostitution?" She may have sent this woman out for girls for prostitution, but did she send her out for girls under eighteen years of age?

From that time onward in the trial of this case it is conclusive to my mind that, Tam-o-Shanter-like, almost anything went. Whatever any citizen did or said that had any connection at all with the girls—the Whitmires or the Alberts—was taken in evidence. There is certain evidence here that the girls were doped. Now, because Mrs. Studer said good help was hard to get, is that any authority for introducing evidence into this case that these girls were doped by somebody else? Or that they were drinking with other men, or that they were prostituting themselves with other men, or that they were of good character prior to that time? Their character is not a feature in this case at all, only to excite and anger the jury against the defendant. And while it is true that courts and juries are sworn to administer the law without fear, favor or affection, if courts and juries are made of men with prejudice and convictions—and you can not entirely disabuse your mind from these things—when a woman of the character of Mrs. Studer comes into court it is difficult for a court, much more for a jury, to forget the enormity

of her crime against society and not wish to heap their anger against her, and not to wish her to be punished whether guilty or not. And we can only raise the courts as high as the best ability of men go and no farther, and of course, I am not expecting we have done that, but we are trying to do that. So that I think that those things are dangerous things, and ought to be guarded against in a trial of this kind. There is not any reason why this woman could not be convicted properly on evidence that is absolutely permissible under the rules of criminal evidence. No reason why she ought not to be convicted in Stark county.

Now we come to the other point. Suppose all that has been said is true, and these girls were induced to go to Canton. Through a remark that this woman had made they entered into the doorway of this Central Hotel. What for? The physical entering of a house of prostitution is not a crime, but it is entering for the purpose of prostitution. Her remarks sent out the poison, suggested by my associate, that was breathed in the air of Tuscarawas county. That poison may have brought the girls into that house, but they did enter for the purpose of prostitution? On the very threshold of that house they are met with the statement, "I do not want girls for servants or for house work; I want girls for prostitution, and I want you to stay here for that purpose." There is where the contract is made. They are not induced nor decoyed to go into that house of prostitution. But they are openly told the moment they enter that house, "I want you for the purpose of prostitution."
They were procured indirectly; they were induced to stay there by her, but that inducement and statement were made to them when they came to the threshold of that door, when they crossed it first. It seems to me, that being true, there is no other rational conclusion than that the venue of that crime is in Stark county. It is simply technical, as I said before. I believe in the guilt of this woman as much as my associates, and I am very glad that my associates have been able to see their way not to let her escape the lash of justice at this time. So I simply make this statement because I believe as a lawyer this is the way the case

stands.  I would not have taken your time in this explanation except for the purpose of showing the reasons and why I dissent.

*W. O. Werntz, Atlee Pomerene* and *Henry Bower,* for plaintiff in error.

*J. F. Greene,* Prosecuting Attorney, and *J. A. Buchanan,* for defendant in error.